**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-11103.

Carlos Perez FLORES, Individually and as Next Friend of Carlos
Tudon Flores, Deceased, et al., Plaintiffs,

Carlos Perez Flores, Individually and as Next Friend of Carlos
Tudon Flores, Deceased, Plaintiff-Appellant,

v.

COUNTY OF HARDEMAN, TEXAS, et al., Defendants,

County of Hardeman, Texas; Chester Ingram, Sheriff of Hardeman
County, Texas, Defendants-Appellees.

Christina Rose Moore, As Next Friend of Shelley Brianne Flores, a
Minor, Individually and as Next Friends of Carlos Tudon Flores,
Deceased, Plaintiff-Appellant,

v.

County of Hardeman, Texas, Defendant-Appellee.

Oct. 14, 1997.

Appeals from the United States District Court for the Northern
District of Texas.

Before JONES, EMILIO M. GARZA and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Carlos Perez Flores and Christina Rose Moore as next friend of
Shelley Brianne Flores appeal the grant of summary judgment for
defendants in their 42 U.S.C. § 1983 and Texas Tort Claims Act
claims against Hardeman County, Texas and Hardeman County Sheriff
Chester Ingram.  We affirm.

FACTS AND PROCEDURAL HISTORY

Plaintiff's decedent Carlos Tudon Flores ("Flores") committed

1

suicide while he was a pretrial detainee in the Hardeman County Jail. Flores was arrested after a one-hour standoff with police, during which he stood on top of a building and fired a rifle, hitting two police cars. Flores was taken to the Hardeman County Jail where he was booked, strip searched and placed in a security cell. The inside of the cell was visible through a small window in the door. Hardeman County Sheriff Chester Ingram ("Ingram") gave orders to check Flores every half hour, instead of the usual one-hour checks. Ingram also ordered that Flores be stripped to his underwear and given only a mattress and pillow instead of the full issue of inmate supplies. Ingram took these precautions because, having known Flores all of his life, he felt that Flores was not acting like himself.

Flores talked to the custodial officer on duty and to another inmate that first night. Flores did not threaten or attempt suicide or exhibit any overt signs that he intended to commit suicide. Flores declined breakfast the next morning. At 11:28 Flores was taken for his arraignment, where his bail was set at $225,000. His father was present at the arraignment, and testified that he did not suspect that Flores was thinking about suicide.

After the arraignment, Flores was fingerprinted, allowed to shower and issued standard inmate supplies: a blanket, toothbrush, cup and soap. He was then placed in a larger cell and checked once an hour. The custodial officers could not visually check the toilet and shower area of the new cell from outside the cell. At 12:31 p.m. the custodial officer saw Flores walking around in his

cell. At 12:45 she could not see him, but could hear him on the sound monitors. At 1:20 p.m. the officer could not see Flores, so she called out to him but he did not respond. Because female officers were not allowed to enter a male inmate's cell alone, she went to find another officer, who was standing outside the jail building. When they entered the cell, they found Flores hanging by a piece of the blanket from the shower curtain rod. The officers cut Flores down and performed CPR, but could not revive him.

Plaintiffs filed a complaint pursuant to 42 U.S.C. § 1983 and the Texas Tort Claims Act, alleging that Flores's Fourth, Fifth Sixth, and Fourteenth Amendment rights had been violated. The district court granted summary judgment for defendants and plaintiffs appeal.

## STANDARD OF REVIEW

To determine the appropriate standard to apply in analyzing constitutional challenges by pretrial detainees, we must first classify the challenge as an attack on a "condition of confinement" or as an "episodic act or omission." *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir.1996). A "condition of confinement" case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *Id.* In such cases we may assume, by the municipality's promulgation and maintenance of the complained of condition, that it intended to cause the alleged constitutional deprivation. *Id.* at 645.

However, if the complained-of harm is a particular act or omission of one or more officials, the action is characterized as

3

an "episodic act or omission" case. *See Hare,* 74 F.3d at 645. In an episodic act or omission case, an actor is usually interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom or rule (or lack thereof) of the municipality that permitted or caused the act or omission. The detainee in such a case must establish that the official(s) acted with subjective deliberate indifference to prove a violation of his constitutional rights. *Scott v. Moore,* 114 F.3d 51, 54 (5th Cir.1997) (en banc). To succeed in holding a municipality accountable for such a violation, the detainee must show that the municipal employee (1) violated his clearly established constitutional rights with subjective deliberate indifference and (2) the violation resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference. *Id., citing Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

*Hare,* an episodic act or omission case, concerned a jail suicide much like the one here. The question remanded to the district court in that case was whether the defendants had actual knowledge of the substantial risk of suicide and responded with deliberate indifference. *Hare,* 74 F.3d at 650. The en banc court recently applied *Hare* to a pretrial detainee claim based on a rape by a jailer. *Scott v. Moore,* 114 F.3d 51 (5th Cir.1997). Although the plaintiff in *Scott* pleaded the case as a "conditions" case for failure to adequately staff, the en banc court held that it, too,

4

was an "episodic act or omission" case.

The plaintiffs here have attempted to plead both an "episodic" case (based on Ingram's acts and omissions) and a "conditions" case (based on training and staffing policies in Hardeman County). However, it is clear after *Hare* and *Scott* that this is an episodic act or omission case. We must therefore first apply the subjective standard to the claims involving Ingram's acts and omissions. Only if we determine that Ingram violated Flores's constitutional rights do we go on to consider whether Hardeman County is liable for that violation.

## SHERIFF'S LIABILITY

A detainee's right to adequate protection from known suicidal tendencies was clearly established when Flores committed suicide in January 1990. *See Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir.1996). We will also assume, based on our holding in a previous appeal in this case, that Ingram had knowledge of Flores's condition. *See Flores v. County of Hardeman,* No. 93-9175 at 5, 1995 WL 295848 (5th Cir., April 17, 1995) (unpublished) ("[W]e conclude that a genuine issue of material fact exists as to Ingram's knowledge of Flores' condition."). However, the summary judgment evidence does not raise a genuine issue of material fact concerning whether Ingram acted with subjective deliberate indifference in providing Flores his constitutionally mandated protection. Sheriff Ingram in fact took appropriate action to protect Flores. He set up special procedures including periodic checks at thirty minute intervals, a special security cell, and

5

prohibited the issue of inmate supplies that Flores could use to harm himself. The protective procedures were kept in effect for twelve hours. Ingram then exercised his judgment that the risk had passed and removed the special procedures. During the twelve hour protection period, Flores talked to various jailers, an inmate, a judge and his father. He did not hint to any of these people that he was contemplating suicide. While it is easy in hindsight to conclude that Ingram's decision to discontinue the protective measures after twelve hours was ill advised, it was not, as a matter of law, deliberately indifferent. Because the summary judgment evidence does not raise a genuine issue of material fact concerning whether Ingram was deliberately indifferent to Flores's suicidal tendencies, we affirm the summary judgment for Ingram.

## HARDEMAN COUNTY LIABILITY

Plaintiffs claim that Hardeman County has a policy or practice of inadequate suicide detection, intervention, and prevention, inadequate training and staffing, and unacceptably dangerous inmate supplies, i.e. a blanket with holes in it, that was torn into strips and used by Flores to hang himself.

To prove an underlying constitutional violation in an episodic act or omission case such as this one, a pretrial detainee must first establish that an official acted with subjective deliberate indifference. *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir.1997). Only then may he hold a municipality accountable for that due process violation. *Id.* Because we have held that plaintiffs' § 1983 claims against Ingram fail, those claims against Hardeman

6

County necessarily fail as well.

Likewise, plaintiffs' Eighth Amendment claims are without merit. The seriousness of Flores's alleged crimes support the decision to set bail at $225,000. *See United States v. Bosquez-Villarreal,* 868 F.2d 1388, 1389 (5th Cir.1989). Further, summary judgment evidence establishes that there was probable cause to bring criminal charges against Flores.

### TEXAS TORT CLAIMS ACT

The district court dismissed plaintiffs' Texas Tort Claims Act claims on jurisdictional grounds without prejudice pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). In a footnote, the district court stated that even if it had maintained supplemental jurisdiction over the pendent claim, it would still have dismissed the claim pursuant to 28 U.S.C. § 1376(c) since all other federal claims in the lawsuit were dismissed. Section 1376(c) states, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction...." We conclude that the district court's decision to dismiss plaintiff's claims without prejudice was not error.

### CONCLUSION

Based on the foregoing, we affirm the district court's judgment for the defendants.

AFFIRMED.